LAW OFFICES OF
**DRATEL & LEWIS**
29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: jdratel@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
AMY E. GREER
JACOB C. EISENMANN

SAMANTHA ENGST-MANSILLA
*Paralegal*

October 14, 2026

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007
(Abrams_NYSDChambers@nysd.uscourts.gov)

Re: *United States v. Evangelista*,
24 Cr. 449 (RA)

Dear Judge Abrams:

This letter is respectfully submitted on behalf of defendant George Evangelista, whom I represent in the above-entitled Violation of Supervised Release (VOSR) proceeding, in support of his renewed motion for pretrial release. For the reasons set forth below, the passage of time and an important change in circumstances, pretrial release should be granted notwithstanding the Court's denial of this motion on two prior occasions.

Mr. Evangelista remains in custody – now approaching ten months – solely as a result of the pending Violation of Supervised Release ("VOSR") that, if modified to Grade C reflect the nature of the New York State charges upon which the specifications in the VOSR are based, corresponds to a U.S. Sentencing Guidelines level of 5-11 months – and only an 8-14 months Guidelines range if the specifications remain at a Grade B violation.

In addition, Mr. Evangelista's mother has been hospitalized, and his pretrial release is necessary not only to support her and her recovery, but also for the care of his 16-year old son who still occupies that apartment he shared with Mr. Evangelista's mother.

Examination of factors relevant to the Court's determination establishes that Mr. Evangelista has met his burden of providing clear and convincing evidence that he does not

represent either a flight risk or a danger to the community or any person.

## I. *Procedural Background and Statement of the Facts*

### A. *The Westchester County and (Subsequent) City of Yonkers Charges*

Mr. Evangelista was arrested December 9, 2025, and charged with Assault in the Second and Third Degrees (New York P.L. § 120.05), Criminal Mischief in the Second Degrees (New York P.L. § 145.10), Operation of a Motor Vehicle While Under the Influence of Alcohol or Drugs (VTL 1192(4)(A)).

He was released pending his appearance in Westchester County Court on the above-enumerated charges. Mr. Evangelista appeared in Westchester County Court December 29, 2026, on those charges, and was ordered released on his own recognizance. However, he was immediately arrested by officers of the Westchester County Police Department, and transferred to the Westchester County Correctional Center ("WCCC") in federal custody based on the VOSR.

The New York State charges were referred January 1, 2026, for grand jury action, but, after evaluation of the facts, evidence, and circumstances, the District Attorney transferred the case to the City Court of Yonkers, and all felony charges against him were dismissed. *People v. Evangelista*, CR-12492-25 (N.Y. Cnty Ct., Westchester Cnty. Feb. 17, 2026).

In the City Court of Yonkers Mr. Evangelista has been charged with the following misdemeanors:

- Criminal Mischief in the Fourth Degree
- Fleeing an Officer in a Motor Vehicle in the Third Degree
- Obstruction of Governmental Administration in the Second Degree
- Reckless Driving
- Reckless Endangerment
- Assault in the Third Degree, Recklessly Causing Physical Injury

The first five misdemeanor charges are brought under case-caption CR-13807-25, and the final charge under case-caption CR-13466-25. Jury trial is set to proceed October 22, 2026.

### B. *Mr. Evangelista's Previous Motions for Pretrial Release*

Mr. Evangelista has moved for pretrial release before this Court on February 27, 2026 and again on May 21, 2026. On both occasions, this Court denied his motion.

**C.** ***Mr. Evangelista's Changed Family Circumstances***

Mr. Evangelista's mother, Selvia ("Selvia"), was hospitalized September 27, 2026 with a number of serious health issues. She remains hospitalized at Montefiore Medical Center in the Bronx.

Mr. Evangelista has two sons: Ivan, 18, who is currently serving in the U.S. Army, and George, Jr., who is 16 years old and living in the apartment that he shared with Selvia. Mr. Evangelista also resided at that apartment prior to his detention.

**II.** ***Mr. Evangelista Should Be Granted Pretrial Release Pursuant to Rule 32.1, Fed.R.Crim.P. and 18 U.S.C. §3143***

**A.** ***The Standard for Determining Pretrial Release***

Rule 32.1(a)(6), Fed.R.Crim.P., provides:

> The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a) pending further proceedings. The burden of establishing that the person will not flee or pose a danger to any other person or to the community rests with the person.

*See also* Rule 46(d), Fed.R.Crim.P. ("Rule 32.1(a)(6) governs release pending a hearing on a violation of probation or supervised release")

In turn, 18 U.S.C. §3143(a)(1) provides, in relevant portion:

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence [. . .] be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

*Id.*[1]

Although the burden is on the defendant to establish by clear and convincing evidence that he will not flee or pose a danger, that presumption is rebuttable. *United States v. Stephens*, 447 F. Supp.3d 63 (S.D. N.Y. 2020) (granting release of defendant pending adjudication of alleged violations of supervised release).

The Court should consider the following disjunctive factors when determining whether a defendant has met its burden: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. *See United States v. Kennedy*, No. 12 CR. 863-9, 2025 WL 296314, at *2 (S.D.N.Y. Jan. 24, 2025), *aff'd sub nom. United States v. Castro*, No. 25-1076, 2026 WL 1098599 (2d Cir. Apr. 23, 2026) (citing 18 U.S.C. §3142(g)).

Additionally, the Court may consider "compelling reasons" for release, under 18 U.S.C. §3142(i). *See Stephens*, 447 F. Supp.3d at 66. Indeed, the Court in *Stephens* found that "[c]ompelling reasons may exist where release is necessary for the preparation of the defendant's defense." *Id.*

### B. *Mr. Evangelista Has Satisfied the Standard for Release Charged*

#### 1. *The Nature and Circumstances of the Offense*

Here, Mr. Evangelista has satisfied those standards for release. Regarding the nature and circumstances of the offense, the VOSR charges Mr. Evangelista with nine specifications. *See Amended VOSR Report*, dated January 8, 2026. The primary violations for which the government sought Mr. Evangelista's detention relate to his alleged conduct that resulted in the New York State charges based on the events of December 9, 2026.

---

[1] Title 18 U.S.C. § 3142(c) provides: "[i]f the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person [. . .] subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community. *Id.* These potential release conditions are enumerated at 18 U.S.C. §3142(c)(B)(i)-(xiv).

As discussed **ante**, all felony charges in relation to this conduct were reduced to misdemeanors to be adjudicated before the City Court of Yonkers. The fact that the State does not consider the conduct serious enough to warrant felony prosecution weighs in favor of a finding that the violations alleged are *minor* offenses. *Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992) ("the law distinguishes between serious and relatively minor offenses"); *People v. Eboli*, N.Y.S.2d 435, 441 (N.Y. 1974) (when deciding between felony or misdemeanor prosecution the principle that "more serious crimes should be charged under statutes providing more serious penalties" should be applied); *cf. Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) (drawing a distinction between serious crimes and minor offenses in the context of Fourth Amendment exigent circumstances).

That Mr. Evangelista remains detained is a classic case of the tail wagging the dog. The State charges were deemed at the outset insufficiently serious to warrant even setting bail or any conditions for his release, yet the VOSR based on them is responsible for his confinement. Compounding that incongruity, Mr. Evangelista cannot resolve the VOSR until the State charges are adjudicated.

Since disposing of the VOSR could very well require admission to specifications implicating the State charges, he cannot and should not be compelled to obtain his liberty solely at the expense of his fundamental constitutional right to maintain his not guilty plea and proceed to trial in the State case. The current posture of the two cases, combined with Mr. Evangelista's continued confinement, therefore creates an untenable tension between two constitutional rights that are his to exercise independently.

The inequity of the situation is further aggravated by the passage of time. The Guidelines recommendation for a Grade C violation is 5-11 months. While (based on discussions between the parties) the Probation Department presently adopts the position that the underlying conduct still justifies a Grade B violation, and that the VOSR will not be modified, that is flatly contradicted by the evaluation by the *authority prosecuting the conduct*.

Consequently, it is respectfully submitted that the far more rational, reasonable, and legally valid conclusion is that the most serious specification is a Grade C violation, and Mr. Evangelista's time in custody has already eclipsed the minimum term (eight months) of the recommended range and will exceed the maximum of the range (eleven months) in little more than a month.

Even for a Grade B violation, with a range of 8-14 months' imprisonment, Mr. Evangelista's detention is rapidly approaching the maximum of that range (considering credit for good time for any sentence in excess of one year).

Mr. Evangelista also suffers an additional deficit from his continued, unwarranted detention: it significantly impairs his ability to participate meaningfully in preparing his defense for trial – another set of constitutional rights guaranteed by the Fifth and Sixth Amendments. *See, e.g., Faretta v. California*, 422 U.S. 806, 819 (1975); *California v. Trombetta*, 467 U.S. 479, 485 (1984).

**2. *Mr. Evangelista's History and Characteristics***

Mr. Evangelista's history and characteristics support pretrial release. Mr. Evangelista has been an extremely valuable member of his community and a bastion of support to his family. Prior to his detention he was the coach of his son's baseball team, was working on a motivational Podcast, and supported his family economically and directly, caring for his two sons and his elderly mother. Even since his incarceration, Mr. Evangelista has maintained strong connections to his entire family through telephone communication.

Also, as noted **ante**, because Mr. Evangelista's elderly mother, Selvia, has been hospitalized with serious medical issues, Mr. Evangelista's supportive presence would not only aid his mother's recovery, but at home he would be of immense benefit to his son, George, Jr.

With respect to the fourth factor, there is little evidence that Mr. Evangelista would pose a danger to any other person or the community. Mr. Evangelista's prior federal conviction is for a non-violent offense, and indeed he has never been convicted of any violent offense. The sole evidence that the government has presented regarding any threat of violence are two spontaneous statements that Probation Officer Estreicher alleges that Mr. Evangelista made: (1) that he had slapped his son George, Jr. (2) that he would bring a knife to prison or court.

Yet neither of those alleged statements is supported by any direct evidence that Mr. Evangelista would use violence towards any person or the community, or that they constituted more than inexcusable and careless talk.

Finally, pretrial release would allow Mr. Evangelista to participate in the adequate preparation of his defense to the State charges, and with respect to the VOSR. That, too, constitutes a compelling reason pursuant to 18 U.S.C. § 3142(i). Due to his pretrial incarceration, Mr. Evangelista has been denied sufficient access to his State defense counsel, and his ability to conduct pre-trial defense investigations has been circumscribed substantially.

These impediments have been exacerbated, in part, by the inconstancy of WCCC's telephone and video conference systems, which often do not function properly. Because Mr. Evangelista's State trial is set to commence October 22, 2026, he is at a critical phase in his defense preparation. Granting him pretrial release would afford him the necessary opportunity to

properly participate in preparing his defense.

## Conclusion

Accordingly, for the reasons set forth above, including the length of time Mr. Evangelista has been detained, and the changed circumstances regarding his mother' health, Mr. Evangelista has met his burden of providing clear and convincing evidence that, if released, he is unlikely to flee or pose a danger to the safety of community. Thus, it is respectfully submitted that the Court should grant Mr. Evangelista's renewed motion for release.

Respectfully submitted,

Joshua L. Dratel

JLD/

Application denied, for the reasons outlined in the Government's letter of October 22, 2026. Mr. Evangelista shall regularly update the Court on the status of the state court proceedings, identifying the cause of any additional delays. To the extent Mr. Evangelista seeks a conference, he and the Government shall jointly propose dates and times to the Court.

SO ORDERED.

Hon. Ronnie Abrams
October 26, 2026